## BLUNT *against* ZUNTZ.

Words used by an attorney, in detailing a statement of a case to a person
to whom he applies to become security, on the bringing of a writ of error,
are to be deemed made in the course of judicial proceedings, and are pri-
vileged. *Ut semb.*

If the words laid in the declaration are not actionable, the defendant must
demur or move in arrest of judgment, he cannot avail himself of the ground
at the trial.

THIS was an action of slander brought against the de-
fendant, an attorney of the court.

It appeared in evidence, that the plaintiff had been dis-
charged on the 4th March, 1812, under the insolvent act,
passed 3rd April, 1811. That, afterward, Chase and Hast-
ings, two of the creditors, prosecuted him in the Mayor's
Court, of the city of New York, for a debt due before his
discharge, they intending to impeach his discharge, on the
ground of fraud. That the defendant was the attorney on
the record for Chase and Hastings, and, at the trial of that
cause, made out, on the part of the plaintiff, *prima facie*, a
strong case of fraud in Blunt, which was, however, con-
tradicted by defendant's witnesses, and the jury gave a
verdict in his favor. That, some questions of legal fraud
having been made in the progress of the cause, a bill of
exceptions had been tendered by the plaintiff to the re-
corder, who presided at the trial. That the defendant,
Zuntz, applied to one Tracey, at the request of Chase and
Hastings, who lived in Boston, to become security for the
costs on the writ of error; and, in conversation with him
on that occasion, in relation to the trial of the issue in the
case of *Chase* and *Hastings.* v. *Blunt*, said " the fraud was

fully proved, and it was through lenity to Blunt's family, that the jury found in his favor."

SPENCER, J.   The speaking of these words, under the peculiar circumstances, cannot sustain this action.   They were spoken by the attorney, in the course of judicial proceedings.(1)

(1) A person acting in the course of his professional duty is entitled to the beneficial presumption arising out of his situation, and the interest with which he is vested, till the malicious intention be proved.   Starkie on Slander, 237; *Brooks* v. *S. H. Montague*, Cro. Jac. 90.

Perhaps, in the principal case, it was going too far, to say that the words proved were spoken *in the course of judicial proceedings;* the exemption on this score is, it seems, strictly applicable to *proceedings of counsel in foro,* only.   The communication, however, made by the defendant in this case, to the person he was soliciting to become surety, was in the course of his professional duty, and certainly a privileged one.   And the same protection has been extended to a similar communication, in the court of K. B., where the party making it was not clothed with a professional character.   Thus, in the case of *Denman* v. *Bigg,* (1 Camp. 269, n.,) the defendant being a brewer, and the plaintiff anxious to deal with him, A. became his surety to the defendant, for the value of the beer he might furnish:  the defendant promising A. to inform him if the plaintiff made default in payment.   This action was brought for a certain communication, made by the defendant to A., charging the plaintiff with an attempt to cheat him, &c.   Lord Ellenborough held this to be a privileged communication, and, in deciding the case, observed, "Had the defendant gone to any other man, and uttered these words of the plaintiff, they certainly would have been actionable; but A., to whom they were addressed, was guarantee for the plaintiff, and defendant had promised to acquaint him when any arrears were due:  he, therefore, had a right to state to A. what he really thought of the plaintiff's conduct in their mutual dealings.   And, even if the representations which he made were intemperate and unfounded, still, if he really believed them, at the time, to be true, he cannot be said to have acted maliciously, and with an intent to defame the plaintiff.   To be sure, he could not lawfully, under color and pretence of a confidential communication, destroy the plaintiff's character, and injure his credit, but it must have the most dangerous effects, if the communications of business are to be beset with actions of slander."

The plaintiff then proved by another witness, that, in a conversation with him, relative to the said trial, the defendant had said the fraud was fully proved, and the jury conceived that Blunt ought to have been prosecuted under the statute for perjury.

The defendant's counsel contended, that the words were not actionable, inasmuch as they conveyed no direct charge.

SPENCER, J. These words, as proved, are the words laid in the declaration, to which the defendant has pleaded not guilty. I cannot, at *Nisi Prius*, decide that question under this plea. The defendant ought to have been de-

It is an established rule, that no action can be maintained against a counsellor for words pertinent to the issue, spoken in judicial proceedings. And it has been correctly observed, that the freedom of speech at the bar is the privilege of the client, and not of the counsel, and that it would be impossible for matters to be properly discussed at *Nisi Prius*, unless considerable latitude were allowed; and if any evil follows from this, it must be endured, for the sake of the greater good which attends it. 1 Barnewell and Alderson, 236. This subject is fully discussed in the case of *Hodgson* v. *Scarlett*, (1 Holt N. P. 621,) which was an action brought against a barrister, for words spoken of the plaintiff, in the trial of the cause. In that case, it was held, that, for imputed slander, originating in judicial proceedings in court, no action will lie. And, upon an application for a new trial, the non-suit at *Nisi Prius* was confirmed, and the rule in *Brooks* v. *S. H. Montague*, (Cro. Jac. 90,) adopted as the correct rule, "That a counsellor hath a privilege to enforce anything which is informed unto him, for his client, and to give it in evidence, it being pertinent to the matter in question, and not to examine whether it be true or false." 1 Barn. & Ald. 232.

Several cases have since occurred sustaining the rule, as above noted, and extending it to the written pleadings and affidavits, used in causes under consideration in Courts of Justice, so that it is now well settled, that the privilege of parties, attorneys, counsel, and solicitors, is complete as to matters pertinent or material; and malice cannot be predicated of what is so said or written. And, further, where it is fairly debateable whether the matter is relevant or not, the courts will incline to give the party or counsel using the words the benefit of the doubt which may fairly exist, as to its pertinency.

murred, if he deemed them not actionable, or he may, after verdict, move in arrest of judgment.(2)

Verdict for plaintiff, 6–100.

*Emmet* and *Sedgwick*, for plaintiff.

*Anthon* and *Ogdén*, for defendant.

The object of this rule is closely connected with the utility of the function of counsel, which consists principally in a liberal freedom of speech, and that he may not be embarrassed by continually balancing in his mind whether the remark he is about to make be slanderous or not. *Hastings* v. *Lusk*, 22 Wend. 410; *Ring* v. *Wheeler*, 7 Cow. 729; *Gilbert* v. *The People*, 1 Denio, 41; *Suydam* v. *Moffat*, 1 Sandf. 489; *Warner* v. *Paine*, 2 Sandf. 195.    Lord Brougham, in the case of *Greenough* v. *Gaskill*, (1 Myl. & Keene, 98,) in a very learned and elaborate opinion, reviews all the cases on the subject of privilege.    This he upholds with a very liberal hand, out of regard, as he says, to the administration of justice, which cannot go on without the aid of men skilled in jurisprudence, in the practice of the courts, and in those matters affecting rights and obligations which form the subject of all judicial proceedings.    According to his view of the subject, the privilege is denied only when the communication has not been made professionally and in the usual course of business, taking these terms in the most extended sense and not confining them to the pendency of an action, or to the expectation of one *in futuro*.

(2) This rule was for a long time rigidly adhered to by the judges, upon this principle: that, by the commission of *Nisi Prius*, they are directed to try the issues, in fact, which should be so sent down for trial.    This confined them to the Record, and the issues they found formed there, and their refusal to notice anything else on the Record, which necessarily belonged to the court *in banco*, seems to have been natural and correct enough.

They seem, however, gradually to have receded from this strictness; and, in *Sadler* v. *Roberts*, (1 Camp. 253,) although strenuously urged by the attorney-general, to adhere to the rule, Lord Ellenborough non-suited the plain‑tiff, for a defective case on the Record, distinct from the issue, and which might have been taken advantage of by motion in arrest of judgment, or by writ of error.    "Why should the defendant," says Lord Ellenborough, "be

put to move in arrest of judgment? judges are in the habit, in such cases, of directing a non-suit."

The attorney-general, being dissatisfied, moved the court to set it aside, but the judges were unanimously of opinion that it ought to stand.

Under the rule mentioned in the beginning of this note, which was understood to restrict the judges at *Nisi Prius* to the trial of the case and issue the attorneys had thought fit to join before them, a class of actions of an embarrassing character was at one period very generally considered as embraced: I mean actions, the trial of which might compromise the dignity of courts of justice, or drag before the public personal defects, or the private history of third persons. The judges, however, have, in modern times, exercised a rigid control over such issues, and have refused (and very properly) to entertain the action at all, notwithstanding the assent and anxiety of the parties to the suit. Examples of this interference will be found in Cowp. 729; 12 East. 247; 2 Camp. 408; 2 H. Bl. 43; *Ditchburn* v. *Goldsmith,* 4 Camp. 153; 3 Campb. 141. So, in a late case in England, reported in the public prints, where an action was brought for a wager on a dog-fight against the stakeholder. *Vide etiam, Good* v. *Elliot,* 3 D. & E. 693, especially the opinion of Buller, J.

In the new code of practice adopted in the state of New York, there is no provision for a motion in arrest of judgment. Sec. 148, however, is generally construed to give pretty full control over the Record to the presiding judge, the power being reserved to him in that section to decide, without regard to the issue, that the complaint does not state facts sufficient to constitute a cause of action.